UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 23 CR 305 |
| v. | ) | |
| | ) | Judge Steven C. Seeger |
| KEVIN CRUZ, | ) | |

---

DEFENDANT'S SENTENCING MEMORANDUM

---

NOW COMES the defendant, Mr. Kevin Cruz, by and through his attorney, Robert J. Kerr, of Lyon & Kerr, PLLC, and respectfully submits the following sentencing memorandum - which includes his objections to the Presentence Investigation Report, Supplemental Report, and Sentencing Recommendation - and moves this Honorable Court pursuant to 18 U.S.C. §3553(a) to impose a term of imprisonment of 22 months, followed by a reasonable term of supervised release.

**I. INTRODUCTION**

Given the mitigating factors set forth herein, Mr. Cruz respectfully submits that a term of imprisonment of 22 months - or any other reasonable term of imprisonment below the advisory guideline range - followed by a term of supervised release would be sufficient, but not greater than necessary to satisfy the factors outlined in 18 U.S.C. § 3553(a). Mr. Cruz comes before this Honorable Court as a 34 year old man who - after being subject to detention at the MCC - came to understand the seriousness of his offense. Mr. Cruz also presents compelling mitigation that

should be considered by this Honorable Court. Mr. Cruz has struggled with severe mental illnesses for many years, and his conduct relevant to the indictment coincided with ongoing mental health crises. Mr. Cruz continues to suffer acute symptoms of mental illness, he has fully accepted responsibility, and he aided the Government by doing so in a timely manner. The imposition of a reasonable term of imprisonment below the advisory guideline range, followed by a term of supervised release crafted to address his mental illnesses, is more than enough to exact both the rehabilitative and punitive goals of sentencing in this matter.

## II. PROCEDURAL HISTORY

On May 16, 2023, the Government filed a complaint, the Court issued a warrant for Mr. Cruz's arrest, and the warrant was executed. On May 17, 2023, the Government moved to detain Mr. Cruz. On May 22, 2023, the Court granted the Government's motion for detention, and denied Mr. Cruz's motion for pretrial release. On June 14, 2023, the Government filed the indictment alleging a violation of 18 U.S.C §2261A(2). On June 21, 2024, Mr. Cruz entered his plea. On August 15, 2024, the U.S. Probation Office ("USPO") filed the Presentence Investigation Report ("PSR"), and disclosed the Sentencing Recommendation ("SREC"). On February 11, 2025, the USPO filed the Supplemental Report ("PSRS"). This matter is scheduled for sentencing hearing before the Honorable Steven C. Seeger on March 13, 2025, at 1:30 p.m. As of the date upon which this memorandum was filed, February 20, 2025, Mr. Cruz has been detained in custody at the Metropolitan Correctional Center ("MCC") in Chicago, Illinois, for 647 days, or more than 21 months.

### III. DEFENDANT'S POSITION ON PSR, SREC, & PSRS

Mr. Cruz does not contest the guideline range provided by USPO, but adamantly disagrees with the conclusion that the appropriate sentence is 48 months. As discussed *infra*, the mitigation Mr. Cruz presents offers a compelling argument for a lower sentence.

Mr. Cruz objects to the PSR's assertion that Victim-1's mother understood Mr. Cruz's sending to her the mugshot of an individual to suggest that Mr. Cruz was going to send someone with a criminal record to her residence. (PSR ¶ 11; SREC, p. 2.) Mr. Cruz admits sending a mugshot of Ernie Jacob Principe to Victim-1's mother, but the Government's discovery indicates that - on the face of the Stalking No Contact Order (2022OP40018) entered on July 13, 2022 - Ernie Principe and Vincent Principe are listed as protected parties. The Government's discovery indicates that Victim-1 - in his communications with at least one website - referred to Vincent Principe as his brother. Mr. Cruz has a good-faith reason to believe that the mugshot he sent to Victim-1's mother depicts an individual well-known by, and related to, Victim-1 and Victim-1's mother. Mr. Cruz does not make this objection in an effort to minimize his own conduct, or the effect that his conduct had on Victim-1 and Victim-1's mother; instead, Mr. Cruz points out that the photo that he sent to Victim-1's mother was of her own relative.

### IV. OFFENSE LEVEL CALCULATIONS

The applicable guideline for a violation of 18 U.S.C. § 2261A(2) is USSG §2A6.2. Mr. Cruz does not contest the PSR's Offense Level Computation (PSR ¶¶ 33-46), Statutory Provisions (PSR ¶ 105), Guideline Provisions (PSR ¶ 106), or Criminal History Computation (PSR ¶¶ 55-56). The adjusted offense level is 22 prior to application of USSG §3E1.1(a). (PSR ¶ 42.) The Probation Officer's position is that Mr. Cruz has - pursuant to USSG §3E1.1(a) -

sufficiently demonstrated acceptance of responsibility for the offense (PSR ¶ 44), and that he has - pursuant to USSG §3E1.1(b) - assisted the Government in the prosecution of his own misconduct by giving timely notice of his intention to enter a plea of guilty. Additionally, the Government agreed at the time of Mr. Cruz's plea that - if the Court finds that Mr. Cruz has fully accepted responsibility within the meaning of USSG §3E1.1(a), and if the offense level is 16 or higher prior to application of USSG §3E1.1(a) - the Government will move for an additional reduction pursuant to USSG §3E1.1(b).

The total offense level of 19, coupled with a criminal history category of I, yields guideline range of 30 to 37 months imprisonment. (SREC, p. 1.) Mr. Cruz objects to the Probation Office's sentencing recommendation of 48 months imprisonment, and argues that such an upward variance is not supported in this case where the factors in mitigation outweigh factors in aggravation pursuant to 18 U.S.C. § 3553(a). *Id*. As described *infra*, this Honorable Court may sentence Mr. Cruz below the guidelines, and Mr. Cruz argues that the mitigating factors set forth in 18 U.S.C. § 3553(a) justify a term of imprisonment below the advisory guideline range.

## V.  18 U.S.C. § 3553(a) FACTORS SUPPORT A SENTENCE OF 22 MONTHS

A term of imprisonment of 22 months - or any other reasonable term of imprisonment below the advisory guideline range - followed by a term of supervised release would be sufficient, but not greater than necessary to satisfy the factors outlined in 18 U.S.C. § 3553(a). Section 3553(a) factors weigh in favor of term of imprisonment below the advisory guideline range.

The United States Supreme Court has ruled that the Sentencing Guidelines are only advisory in nature. *United States v. Booker*, 543 U.S. 220, 260-63 (2005). The Federal

Sentencing Guidelines serve as a "starting point and "initial benchmark in the determination of a just and appropriate sentence. See *Gall v. United States*, 552 U.S. 38, 49-51 (2007); *Pepper v. United States*, 562 U.S. 476, 489 (2011); *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quoting *Gall*, 552 U.S. at 49.) *Gall* directs sentencing judges to "consider all of the 3553(a) factors to arrive at a just sentence that is "sufficient but not greater than necessary to achieve the purposes of sentencing. 18 U.S.C. § 3553(a).

As a result, this Honorable Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to just his crime. *Pepper v. United States*, 562 U.S. at 489. The "sufficient but not greater than necessary" standard—also known as the "parsimony clause"—is the "overarching provision of § 3553(a). *Kimbrough*, 552 U.S. at 101. As the parsimony provision commands, sentencing courts shall only impose "a sentence sufficient, but not greater than necessary to comply with the purposes set forth" under 18 U.S.C. § 3553. *United Sates v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005). So long as the sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

In determining a sentence that reflects this directive, Section 3553(a)(1)-(7) specifically directs courts to consider multiple factors. These include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for a sentence that reflects seriousness, deterrence, public safety, and defendant needs (medical, educational, and other). The factors also include the guidelines range; relevant policy statements; avoidance of unwarranted sentence disparities; and restitution. 18 U.S.C. § 3553(a)(1)-(7).

In fashioning a sentence that is sufficient, but not greater than necessary, Mr. Cruz respectfully requests that this Honorable Court consider the totality of the circumstances surrounding the instant offense, his personal history and characteristics, and - with proper medical attention - his low risk of reoffending. A term of imprisonment of 22 months - followed by term of supervised release during which meaningful conditions would enable to monitor Mr. Cruz's compliance with treatment - is sufficient to exact both the rehabilitative and punitive goals of sentencing on a person who has struggled with mental health since a very young age.

### A. Nature and Circumstances of the Offense

Mr. Cruz does not disagree with the Government's position regarding the serious nature of this offense. While he does not intend to minimize the seriousness of his conduct, or the impact of his actions on others, he prays that this Honorable Court consider the nature of the offense in the context of his history of trauma, mental illness, emotional dysregulation, and repeated efforts to seek treatment and counseling. The seriousness of Mr. Cruz's offense is substantially mitigated by Mr. Cruz's acceptance of responsibility for his conduct and his personal background and relevant history, which includes a willingness to avail himself of medical attention and an acute awareness of his condition.

### B. History and Characteristics of the Defendant

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the guideline calculation; indeed, the guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). See *Rita v. United States*, 551 U.S. 338, 364-65

(2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are. . . matters that§ 3553(a) authorizes the sentencing judge to consider."). Therefore, this Honorable Court is urged to balance the federal sentencing guideline calculations by considering the history and characteristics of Mr. Cruz that weigh in favor of a below-guidelines sentence.

Kevin Cruz was born on November 8, 1990, in Chicago, Illinois. Mr. Cruz has two brothers, Christian and Craig. Craig is Mr. Cruz's twin. (PSR ¶ 65.) When Mr. Cruz was 18, he disclosed to his family that he is gay. While Mr. Cruz's father appeared to accept this news, he also told him this might be a "phase" and therefore, he should keep the information to himself. Mr. Cruz's mother also suggested he keep his sexual orientation to himself for fear of safety and hate crimes. Mr. Cruz reported his brothers were accepting of him. (PSR ¶ 67.) Mr. Cruz reported that he did not receive support from his close friends when he disclosed being gay. His friends, who were religious, communicated to Mr. Cruz he would be "going to hell." Mr. Cruz reported this rejection is aligned with when he started experiencing depression. (PSR ¶ 75.)

Medical records dating back to 2010 indicate that Mr. Cruz has reported suffering from trauma related to multiple sexual assaults, as well as physical assaults. (PSR ¶¶ 75-77, 81.) He reported being raped by an employer, and by someone with whom he had a previous relationship. (PSR ¶¶ 75, 81.) At a crucial developmental stage in his life, Mr. Cruz was sexually assaulted on several occasions, and was met with indifference and inaction when he reported those incidents to law enforcement. *Id.* Although Mr. Cruz does not intend to minimize his responsibility for the

conduct which lead to the filing of the 2011OP74390 in the Circuit Court of Cook County, or that which led to his arrest in connection with 2017CF002706 in Dane County, Wisconsin, Mr. Cruz wishes to draw this Court's attention to the fact that he engaged in that conduct after reporting his incidents of sexual assault to law enforcement, and - in states of severe mental illness - acted against the individuals that he had reported to be his rapists. He also reported being physically attacked on at least two occasions while in college, because of his sexual orientation. (PSR ¶ 77.) Mr. Cruz has a history of self harming behaviors, suicidal ideation, suicide attempts, and cutting. (PSR ¶ 75.) Mr. Cruz reported that he has attempted suicide twelve times, his first attempt to be at the age 19. (PSR ¶ 79.) Some of these attempts have resulted in hospitalization. (PSR ¶ 77; see also PSRS pp. 1-2.) He also reported recent suicide attempts while at the MCC, including once when he was planning to hang himself in his cell, but stopped when his cell mate woke up. He most recently attempted suicide in July, 2024. (PSR ¶ 79.)

Members of Mr. Cruz's family attribute the start of his mental health challenges to his first sexual assault, although they were not aware of it at the time. (Exhibit A.) For instance, Mr. Cruz's mother noticed a stark change in her son's behavior around his junior year in high school, after he started a lifeguarding job. She did not learn until years later that Mr. Cruz had been sexually assaulted around that time. (Exhibit A-1, A-2.)

Mr. Cruz's diagnoses include, in part, post traumatic stress disorder (PTSD), recurrent major depressive disorder, generalized anxiety, self harm, and eating disorders. (PSR ¶ 77.) In May of 2022, he was diagnosed with borderline personality disorder. (PSR ¶ 83.) Throughout various treatments, he has received prescriptions for medications to treat depression and anxiety. While at the MCC, he has been prescribed only Buproprion (100mg) and an Albuterol inhaler

(8.5gm), and he has received some level of medical attention, but his symptoms persist. (PSRS p. 2.)

Despite significant mental health challenges dating back to late adolescence, Mr. Cruz excelled in many educational and career related pursuits. With intensive mental health treatment and counseling, Mr. Cruz has great potential for rehabilitation. Mr. Cruz holds a bachelor's degree in nursing from Purdue University, and has maintained a long history of gainful employment as a nurse throughout the Chicagoland area. (PSR ¶¶ 90, 94-99.) He has also volunteered in the community in various capacities, from health care work to crisis intervention to animal welfare. (See, e.g., PSR ¶ 85; Exhibit A.)

Members of his family note that he was always serious about academics, educational pursuits, and career path. (Exhibit A.) For example, his twin brother reported that Mr. Cruz always showed an impressive work ethic and was committed to his studies throughout his educational career. "Kevin has never been satisfied with simply meeting expectations; he constantly pushes himself to be the best, striving for improvement in everything he does." (Exhibit A-9.)

On October 31, 2020, Mr. Cruz married Jeremy Schmitz. By September of 2021, he was separated, and the divorce was final in March of 2024. Mr. Cruz attributed the divorce to many things, including Mr. Schmitz not being prepared to support Mr. Cruz's mental health challenges. (PSR ¶ 69.) Mr. Cruz's offense in this case came on the heels of his separation from his spouse, and he has come to accept that his personal relationships, employment, and freedom depend entirely on the restoration of his mental health. While Mr. Cruz's unlawful conduct in this case commenced prior to the termination of his employment as a nurse at Rush University Medical

Center in April 2022, his mental health worsened and his unlawful conduct intensified in the wake of his termination.

Mr. Cruz's most recent suicide attempt prior to his arrest was in April of 2022, when he attempted suicide twice in the course of three days. (PSRS p. 1.) Mr. Cruz's suicide attempts coincide with his separation from his spouse, Victim-1's rejection of his romantic interest in Victim-1, and his loss of employment. (PSR ¶ 97.) Neither the breadth nor depth of Mr. Cruz's mental or physical impairments can be used to rationalize Mr. Cruz's behavior; instead, Mr. Cruz draws attention to the causal relationship between his mental health and his behavior to highlight his acceptance of responsibility not only for his criminal conduct, but for the restoration of his mental health.

### C. Other Factors Pursuant to 18 U.S.C. § 3553(a)

Mr. Cruz has been incarcerated for more than 21 months, and records indicate that he has been treated for several disorders at the MCC, but he continues to suffer from severe mental illness. An upward variance may better secure the safety of others in the relative short term, but an upward variance will delay Mr. Cruz's access to intensive mental health treatment and this Court's enforcement of his compliance with meaningful conditions of release. Pursuant to 18 U.S.C. § 3553(a)(2)(D), this Honorable Court shall consider the need to "provide the defendant with […] medical care, or other correctional treatment in the most effective manner[.]"

Over the course of his adolescent and adult life, Mr. Cruz has faced a myriad of severe mental health challenges that would be better addressed by conditions of supervised release, including computer software monitoring, mental health counseling, and strict adherence a well-developed treatment regimen. The proposed conditions of release promote rehabilitation and

reduced recidivism, whereby securing the public's long term safety. An extended term of incarceration will deprive Mr. Cruz of a robust set of mental health resources unavailable inside the walls of any carceral setting. Mr. Cruz enjoys the unwavering support of his immediate and extended family members who are prepared to support him in what he now understands to be life-long commitment to the maintenance to his mental health and coping mechanisms. Mr. Cruz aspires to return - in some capacity - to working in the field of health care, but he is also prepared for the challenges he will face in this regard, given the collateral consequences that his conviction may have on his nursing license.

Pursuant to 18 U.S.C. § 3553(a)(6), the Court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Given the mitigation discussed *supra*, a term of imprisonment of 22 months followed by a term of supervised release would not result in unwarranted sentencing disparities pursuant to 18 U.S.C. § 3553(a)(6).

In Fiscal Year (FY) 2023, a total of 240 individuals were sentenced in federal courts for stalking/harassing. The average length of sentence for those individuals was 29 months.[1] Of those sentenced for stalking/harassing, a total of 86 individuals were subject to downward variance, 20 had a downward departure, 4 had a substantial assistance departure, and 23 had an upward variance.[2] This means that nationally, nearly half of those sentenced had a downward adjustment to their sentence.

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC-2023_Quarterly_Report_Final..pdf

[2] *Id*., at p. 23-27.

Here, if the Court determines that the offense level is 19, and that Mr. Cruz's criminal history category is I, then the sentencing guidelines range of 30 to 37 months imprisonment is one to eight months longer than the average length of sentence for individuals sentenced for stalking/harassing in FY 2023. If the Court determines that the offense level is 22, and that Mr. Cruz's criminal history category is I, then the sentencing guidelines range of 41 to 51 months imprisonment is 12 to 22 months longer; lastly, the Probation Office's recommended sentence of 48 months imprisonment is 19 months longer than the average length of sentence for individuals sentenced for stalking/harassing in FY 2023.

While the Quarterly Report dataset does not allow for analysis specific to the Northern District of Illinois, there are some useful comparison cases outside the district, including the following:

- *United States v. Omoruyi O. Uwadiae*, 2:24-cr-00063 (Southern District of Ohio) – Mr. Uwadiae pleaded guilty to eight counts of cyberstalking, seven counts of interstate communications with the intent to extort, and seven counts of unlawfully using a means of identification. He sexually exploited eight victims online, and was sentenced to 51 months.
- *United States v. Julyen Martin*, 0:22-cr-00100 (District of Minnesota) – Mr. Martin committed cyberstalking by threatening and intimidating two victims: his ex-wife and her step-father. He pleaded guilty and was sentenced to 46 months on each count.
- *United States v. Lerin Hughes*, 3:22-cr-30068 (Central District of Illinois) – Ms. Hughes was convicted after trial of making online threats towards DCFS workers and Governor Pritzker. She was sentenced to 42 months on two counts.
- *United States v. Derik Bowers*, 3:23-cr-00019 (Northern District of West Virginia) – Mr. Bowers pleaded guilty to harassing his former girlfriend, and undermining her business via social media. He was sentenced to 41 months.

Of course, the records of defendants and the nature of conduct vary between individual cases, but these cases, along with the national averages, support the proposition that the sentence recommended by Mr. Cruz would avoid unwarranted sentencing disparities.

This Court must fashion a sentence that only protects against sentencing disparities, but also - pursuant to 18 U.S.C. § 3553(a)(2)(D) - provides the defendant with mental health treatment. Due to Mr. Cruz's significant mental health issues, the combination of requirements that can be placed upon him under supervised release provide that care in ways that a carceral setting simply cannot. Over the last several decades, prison systems have become environments for mental health care, by default, without appropriate resources. This is because psychiatric care within institutions has decreased significantly. In 1955, state psychiatric hospitals housed over a half-million people. By 2000, there were only 55,000 individuals in mental hospitals nationwide.[3]

There are other reasons, beyond the deinstitutionalization of in-patient care, that those with severe mental illness (SMI) end up incarcerated. "In 2020, individuals living with SMI were more likely to be incarcerated than in a psychiatric hospital. Based on the total inmate population, this means that more than 300,000 individuals with SMI are incarcerated (Bureau of Justice Statistics, 2017), which is twice the number of patients in psychiatric hospitals."[4]

Additionally, pursuant to 18 U.S.C. § 3553(a)(5)(A), this Court shall consider "any pertinent policy statement—issued by the Sentencing Commission pursuant to [28 U.S.C. §994(a)(2)][,]" including, but not limited to, USSC §5H1.1 and USSC §5H1.3. While Mr. Cruz was approximately 31 years old at the time he began to engage in the conduct relevant to the indictment, Mr. Cruz's suffered traumatic assaults and severe mental illness at ages when

---

[3] Corinna Barrett Lain, *The Road to Hell is Paved with Good Intentions: Deinstitutionalization and Mass Incarceration Nation*, 65 Wm. & Mary L. Rev. 893 (2024), 907.

[4] Douglas, Jillian K., "Evaluating the Impact of Federal Mental Health Policy: An Analysis of How Federal Deinstitutionalization Impacted Persons with Severe Mental Illness" (2021). Doctor of Nursing Practice Projects, 23.

youthful individuals are "generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood." (USSC §5H1.1). Furthermore, USSC §5H1.3 provides that "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Mr. Cruz's personal characteristics and mental health history distinguish him from other similarly situated defendants to a degree that renders a meaningful downward departure appropriate and necessary.

## VI. CONCLUSION

For the reasons stated in this memorandum Mr. Cruz prays for this Court's mercy, wisdom, and exercise of discretion. Mr. Cruz respectfully moves - pursuant to 18 U.S.C. §3553(a) - for a sentence of imprisonment of 22 months, followed by a reasonable term of supervised release. Mr. Cruz argues that such a sentence - so long as it tailored to address Mr. Cruz' unique characteristics and metal health history - is sufficient, but not greater than necessary, to further the administration of justice, promote public safety, and reduce recidivism.

Respectfully submitted,

*/s/ Robert J. Kerr*
Robert J. Kerr
Attorney for Mr. Cruz
Lyon & Kerr, PLLC
36 S. Washington Street, Suite 201
Hinsdale, Illinois 60521
Cell: 773-322-7400
Office: 312-955-4400
rkerr@lyonkerr.com
Illinois ARDC 6286581

## CERTIFICATE OF SERVICE

The undersigned, Robert J. Kerr, hereby certifies that - in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P.5, and the General Order on Electronic Case Filing (ECF) - a true and correct copy of the above *DEFENDANT'S SENTENCING MEMORANDUM* was served via the CM/ECF system upon the United States Attorney's Office for the Northern District of Illinois, and other parties of record, on February 20, 2025, before 5:30 p.m.

Respectfully submitted,

*/s/ Robert J. Kerr*
Robert J. Kerr
Attorney for Mr. Cruz
Lyon & Kerr, PLLC
36 S. Washington Street, Suite 201
Hinsdale, Illinois  60521
Cell:   773-322-7400
Office: 312-955-4400
rkerr@lyonkerr.com
Illinois ARDC 6286581